# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **FREMANTLEMEDIA NORTH AMERICA, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**KIDS GOT TALENT, INC. AND SKY COFFEE,**<br><br>*Defendants.* | Civil Action No. _________________<br><br>Complaint for Trademark Infringement, False Designation of Origin/False Endorsement, and Cybersquatting.<br><br>Demand for Jury Trial. |

## COMPLAINT

Plaintiff FremantleMedia North America, Inc. ("Plaintiff") sues Defendants Kids Got Talent, Inc. and Sky Coffee ("Defendants"), and alleges the following:

## JURISDICTION

1. This is an action for trademark infringement in violation of 15 U.S.C. § 1114, false designation of origin and/or false endorsement in violation of 15 U.S.C. §1125(a), cybersquatting in violation of 15 U.S.C. § 1125(d), as well as common law trademark infringement and unfair competition.

2. This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question) and 1338 (trademark and copyright). This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendant Kids Got Talent, Inc. because Kids Got Talent, Inc. is a domestic Georgia corporation with its principal office address in Georgia.

4. This Court has personal jurisdiction over Defendant Sky Coffee because, on information and belief, Ms. Coffee is a Georgia resident living and residing within the State of Georgia.

5. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6. Plaintiff FremantleMedia North America, Inc. is a Delaware corporation with a business address at 2900 West Alameda Avenue, 8th Floor, Burbank, California 91505.

7. On information and belief, Defendant Kids Got Talent, Inc. ("KGT Inc.") is a Georgia corporation with a principal office address at 11720 Amber Park Dr. 160, 7219, Alpharetta, Georgia 30009.

8. On information and belief, Defendant Sky Coffee ("Defendant Coffee") is a Georgia resident with an address at 11720 Amber Park Dr., #160, Alpharetta, Georgia 30009.

9. On information and belief, Defendant Coffee is KGT Inc.'s CEO and

CFO.

## FACTS COMMON TO ALL COUNTS

### I. PLAINTIFF'S FAMOUS AMERICA'S GOT TALENT MARKS.

10. Plaintiff creates, produces and distributes some of the best known and loved entertainment content in the world, including but not limited to, America's Got Talent.

11. America's Got Talent is an ongoing talent competition television program that airs on NBC and features performers of all types competing for a $1 million cash prize. The show currently stars celebrity judges Simon Cowell, Sofia Vergara, Mel B, and Howie Mandel and is hosted by Terry Crews. It first aired June 21, 2006, and is currently in its 21st season. For the last twenty years, millions of viewers across the country have tuned in each season to watch the nationally televised competition.

12. Plaintiff is an owner of and has the exclusive right to enforce the trademark AMERICA'S GOT TALENT (the "AMERICA'S GOT TALENT Mark" or "Plaintiff's Mark") and has used Plaintiff's Mark in commerce consistently in connection with its television program and related services and products since at least as early as 2006.

13. Plaintiff has not abandoned the AMERICA'S GOT TALENT Mark.

14. Due to the investment in and use of the AMERICA'S GOT TALENT Mark for over two decades, the AMERICA'S GOT TALENT Mark has accrued substantial goodwill and serves to identify goods and services originating exclusively from or otherwise associated with Plaintiff and is distinctive of Plaintiff's well-known goods and services.

15. Plaintiff is an owner of various federal trademark registrations for the AMERICA'S GOT TALENT Mark, including but not limited to the following (the "AMERICA'S GOT TALENT Registrations" or "Plaintiff's Registrations"):

a. U.S. Trademark Registration No. 3350449 covering "entertainment services in the nature of an ongoing television talent show" in International Class 41 (the " `449 Registration");

b. U.S. Trademark Registration No. 4059779 covering "live stage shows" in International Class 41 (the " `779 Registration"); and

c. U.S. Trademark Registration No. 6164678 covering "t-shirts" in International Class 25 (the " `678 Registration").

16. Each of the AMERICA'S GOT TALENT Registrations is valid, enforceable, and subsisting on the principal register. Plaintiff's `449 Registration and `779 Registration also are incontestable under 15 U.S.C. § 1065. Copies of certificates of registration from the U.S. Patent and Trademark Office for each of the

AMERICA’S GOT TALENT Registrations are attached hereto as Exhibit A.

17. Plaintiff’s incontestable `449 Registration and `779 Registration, together with its `678 Registration, are, respectively, conclusive *prima facie* evidence of the validity of Plaintiff’s Mark and of registration of Plaintiff’s Mark, of Plaintiff’s ownership of Plaintiff’s Mark, and of Plaintiff’s exclusive right to use Plaintiff’s Mark in commerce on or in connection with the goods and services specified in the AMERICA’S GOT TALENT Registrations.

## II. BACKGROUND ON DEFENDANTS AND DEFENDANTS’ PERSISENT WILLFUL INFRINGEMENT.

18. Defendants are longstanding, persistent, willful infringers of Plaintiff’s AMERICA’S GOT TALENT Mark.

19. On or about March 24, 2021, Plaintiff learned that Defendant Coffee filed U.S. Trademark Application Serial No. 90576410 for the mark covering “national talent showcase and television show production featuring dancers, artists, models, acrobats, poets, bands, celebrities, and musicians,” in International Class 41 (the “KGT Application”).

20. Plaintiff sent Defendant Coffee a cease-and-desist letter advising Defendant Coffee of Plaintiff’s rights in the AMERICA’S GOT TALENT Mark, among others, and demanding that Defendant Coffee withdraw the KGT Application

and stop using the mark KIDS GOT TALENT (the "Infringing Mark"). A true and correct copy of the cease-and-desist letter is attached as Exhibit B.

21. Defendant Coffee did not respond to the cease-and-desist letter.

22. On or about May 5, 2021, Plaintiff sent a follow-up letter to Defendant Coffee. A true and correct copy of the follow-up letter is attached as Exhibit C.

23. Defendant Coffee did not respond to Plaintiff's follow-up letter.

24. On or about June 24, 2021, Plaintiff sent a second follow-up letter to Defendant Coffee. A true and correct copy of the second follow-up letter is attached as Exhibit D.

25. Defendant Coffee did not respond to Plaintiff's second follow-up letter.

26. On or about April 13, 2022, Plaintiff timely filed a Notice of Opposition in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board against the KGT Application. Plaintiff alleged priority and likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), based on Plaintiff's prior ownership and use of the AMERICA'S GOT TALENT Mark and its `449 Registration and `779 Registration, T.T.A.B. Proceeding No. 91275600 (the "Opposition").

27. Defendant Coffee filed an answer to the Notice of Opposition, and the Opposition was then fully litigated by Plaintiff and Defendant Coffee, through trial.

28. A final decision in Plaintiff's favor was subsequently rendered on the merits by the Trademark Trial and Appeal Board.

29. On November 6, 2024, more than two and a half years after the Opposition was first filed, a panel of three Administrative Trademark Judges rendered a final decision sustaining Plaintiff's opposition to the KGT Application based on Plaintiff's claim of priority and likelihood of confusion. A true and correct copy of the Board's final decision sustaining Plaintiff's opposition is attached as Exhibit E.

30. The Board ruled that Plaintiff established proprietary rights in Plaintiff's Mark prior to Defendant Coffee's constructive and actual use of the Infringing Mark, and that there was a likelihood of confusion. Specifically, the Board found that:

a. the parties' respective marks are similar in appearance, sound, connotation, and commercial impression;
b. the parties' respective services overlap;
c. the parties' established, likely to continue trade channels were the same;
d. the classes of consumers to whom the parties' talent show services are marketed are the same;
e. ordinary consumers were likely to exercise only ordinary care in

seeking to watch talent shows on network television;

f. Plaintiff's Mark is on the high end of the fame/commercial strength spectrum among a significant portion of relevant U.S. consumers and the "extraordinary level of the mark's fame means that it is entitled to a broad scope of protection[,]" (*Id.*); and

g. on balance, Plaintiff proved confusion was likely.

31. Defendant Coffee filed a request for reconsideration of the Board's decision in the Opposition, which Plaintiff opposed, and which the Board ultimately denied. A true and correct copy of the Board's order denying Defendant Coffee's request for reconsideration is attached as Exhibit F.

32. Defendant Coffee did not thereafter appeal the Board's decision through any available avenue.

33. On or about June 23, 2025, after Defendant Coffee's appeal deadline lapsed, Plaintiff sent another cease-and-desist letter to Defendant Coffee, demanding that she stop using the Infringing Mark in light of the Board's decision finding that the mark in the KGT Application was likely to cause confusion, mistake, or deception. A true and correct copy of Plaintiff's post-judgment cease-and-desist letter is attached as Exhibit G.

34. Defendant Coffee did not respond to Plaintiff's post-judgment cease-

and-desist letter.

35. On or about January 14, 2026, Plaintiff learned that Defendant Coffee and/or KGT Inc. had announced a "2026 Kids Got Talent Showcase," scheduled to take place at the Porter Sanford Theatre in Decatur, Georgia on February 21, 2026.

36. Due to Defendant Coffee and/or KGT Inc.'s use of the Infringing Mark, Plaintiff sent a cease-and-desist letter to the Porter Sanford Theatre demanding that it permanently stop using and take down the Infringing Mark from all locations displaying the Infringing Mark. A true and correct copy of Plaintiff's cease-and-desist letter to the Porter Sanford Theatre is attached as Exhibit H.

37. On February 23, 2026, and March 23, 2026, Plaintiff sent follow-up letters to the Porter Sanford Theatre but received no response. True and correct copies of the follow-up letters Plaintiff sent to the Porter Sanford Theatre are attached as Exhibit I.

38. On information and belief, as of the date of this complaint, Defendant Coffee, KGT Inc., or both, is/are using the Infringing Mark on or in connection with the advertising, promotion, and/or offering of live talent showcases, television show productions, and/or related goods and services.

39. On information and belief, Defendant Coffee, KGT Inc., or both, own the domain name <kidsgottalent.org> (the "Infringing Domain Name").

40. As of the date of this complaint, the Infringing Domain Name resolves to a website bearing the Infringing Mark (the "Infringing Website"). True and correct screenshots of the Infringing Website are attached as Exhibit J.

41. The Infringing Website also bears Plaintiff's AMERICA'S GOT TALENT Mark without approval or authorization from Plaintiff. The Infringing Website claims that "KGT has evolved into a star-studded competition that has drawn attention from *America's Got Talent*[.]*" (*Id.*)

42. By claiming that "KGT has evolved into a star-studded competition that has drawn attention from *America's Got Talent*," in more than one section of the Infringing Website, Defendant Coffee, KGT Inc., or both, falsely suggest that Plaintiff is affiliated with, connected with, or associated with one or more of the Defendants or that Defendants' goods and services are sponsored by or approved by Plaintiff, when they are not.

43. The Infringing Website also advertises, sells, and/or offers for sale t-shirts and DVDs bearing the Infringing Mark. (*Id.*)

44. Defendants are not associated with or affiliated with Plaintiff.

45. Plaintiff has not authorized Defendants to use Plaintiff's AMERICA'S GOT TALENT Mark or the Infringing Mark.

46. Defendants' actions are persistent, willful, and in bad faith and have

forced Plaintiff to bring this action in this Court to protect its valuable trademarks and brand.

**COUNT I.**
**INFRINGEMENT OF A REGISTERED TRADEMARK**
**IN VIOLATION OF 15 U.S.C. § 1114**

47. Paragraphs 1-46 are re-alleged and incorporated herein by reference.

48. As set forth above, Defendants are using in commerce one or more reproductions, counterfeits, copies, or colorable imitations of Plaintiff's Mark on or in connection with the sale, offer for sale, distribution, or advertising of goods and/or services in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of Defendants' goods and services.

49. Defendants' aforesaid actions are likely to cause damage and other irreparable injury to Plaintiff unless such actions are enjoined by this Court, Plaintiff having no adequate remedy at law.

50. Defendants' aforesaid actions constitute an infringement of Plaintiff's rights in and to its federally registered AMERICA'S GOT TALENT Mark in violation of 15 U.S.C. § 1114.

51. Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's Mark and Plaintiff's Registrations and knowledge that such acts are likely to cause confusion, or to cause mistake, or to deceive as to the source

or origin of Defendants' goods and/or services. Defendants' acts are therefore intentional, willful, and maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

52. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based on the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorneys' fees, treble damages, and/or enhanced profits.

53. Plaintiff has been and will continue to be irreparably damaged by Defendants' aforesaid acts unless Defendants are permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

## COUNT II.
## FALSE DESIGNATION OF ORIGIN AND/OR FALSE ENDORSEMENT IN VIOLATION OF 15 U.S.C. § 1125(a)

54. Paragraphs 1-46 are re-alleged and incorporated herein by reference.

55. Defendants are using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact on or in connection with their goods and/or services in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by Plaintiff.

56. Defendants' aforesaid acts have been and are being committed with knowledge of Plaintiff's Mark and knowledge that such acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods or commercial activities by Plaintiff. Defendants' acts are therefore intentional, willful, and maliciously calculated to cause confusion, to cause mistake, or to deceive. As such, this is an exceptional case.

57. Defendants' acts constitute false designation of origin and/or false endorsement in violation of 15 U.S.C. § 1125(a).

58. In accordance with 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based on the nature of Defendants' violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorneys' fees, treble damages, and/or enhanced profits.

59. Plaintiff has been and will continue to be irreparably damaged by Defendants' aforesaid acts unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

**COUNT III.**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

60. Paragraphs 1-46 are re-alleged and incorporated herein by reference.

61. Defendants' use of one or more marks that is/are confusingly similar to Plaintiff's Mark, in connection with goods and/or services which are the same as or are competitive with Plaintiff's goods and services, is likely to cause confusion, to cause mistake, and to deceive as to the source or origin of their goods and/or services.

62. Defendants are offering their goods for sale with full knowledge of Plaintiff's Mark.

63. Defendants have promoted and offered for sale their goods and/or services in such a manner as to suggest an association, affiliation, or sponsorship with, or approval by Plaintiff, or so as to cause, or be likely to cause, confusion or mistake among purchasers as to the origin or sponsorship of Plaintiff's or Defendants' goods and/or services, all to Defendants' profit and Plaintiff's damage.

64. Plaintiff is entitled to recover from Defendants actual and compensatory damages in an amount to be proven at trial in addition to any other available remedies.

65. Defendants' aforesaid conduct constitutes infringement of Plaintiff's common law rights in and to Plaintiff's Mark and further constitutes common law

unfair competition, all of which has irreparably damaged and/or will irreparably damage Plaintiff, together with its goodwill and reputation, unless Defendants are enjoined and restrained by this Court, Plaintiff having no adequate remedy at law.

**COUNT IV.**
**CYBERSQUATTING IN VIOLATION OF 15 U.S.C. § 1125(d)**

66. Paragraphs 1-46 are re-alleged and incorporated herein by reference.

67. On information and belief, Defendants registered, traffic in, or are using or have used the Infringing Domain Name, which is confusingly similar to Plaintiff's Mark.

68. Plaintiff's Mark was first used as early as 2006.

69. On information and belief, one or more of the Defendants created the Infringing Domain Name on or about April 16, 2016, approximately a decade after Plaintiff first started using Plaintiff's Mark.

70. Plaintiff's Mark was distinctive at the time the Infringing Domain Name was registered.

71. On information and belief, Defendants have a bad faith intent to profit from Plaintiff's Mark (and/or have already done so).

72. On information and belief, among other things:

a. Defendants do not have any trademark or other intellectual property rights in the Infringing Domain Name;

b. Defendants did not make prior use of the Infringing Domain Name in connection with the bona fide offering of any goods or services;

c. Defendants do not make or have not made bona fide noncommercial or fair use of Plaintiff's Mark in a site accessible under the Infringing Domain Name;

d. Defendants intend to divert consumers from Plaintiff's actual online location to a site accessible under the Infringing Domain Name (the Infringing Website) that harms the goodwill represented by Plaintiff's Mark for commercial gain or with the intent to tarnish or disparage Plaintiff's Mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

e. Defendants have registered or acquired the Infringing Domain Name, which they know is identical or confusingly similar to Plaintiff's Mark that was distinctive at the time of registration of such domain name, or dilutive of famous marks that were famous at the time of registration of such domain name.

73. In accordance with 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants: (1) their profits, (2) any damages sustained by Plaintiff, and (3) the costs of the instant action. Further, based upon the nature of Defendants'

violation of Plaintiff's trademark rights, Plaintiff is entitled to recover reasonable attorneys' fees, treble damages, and/or enhanced profits.

74. Alternatively, in accordance with 15 U.S.C. § 1117(d), Plaintiff is entitled to an award of statutory damages of not less than $1,000 or more than $100,000 per domain name pursuant to 15 U.S.C. § 1117(d).

75. In accordance with 15 U.S.C. § 1125(d)(1)(C), Plaintiff is further entitled to forfeiture or cancellation of the Infringing Domain Name or transfer of the Infringing Domain Name to Plaintiff.

76. Plaintiff has been and will continue to be irreparably damaged by Defendants' aforesaid acts unless Defendants are preliminarily and permanently enjoined by this Court, Plaintiff having no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment of the Court as follows:

1. That Defendants, and those persons in active concert or participation with Defendants, be permanently enjoined and restrained from advertising, offering for sale, or selling any goods or services bearing, under, or in connection with Plaintiff's Mark, the Infringing Mark, or any other designation, trademark, or service mark that is likely to cause confusion, mistake, or deception as to the source or sponsorship of Plaintiff's or Defendants' goods, and from otherwise infringing

Plaintiff's Mark;

2. That an accounting be conducted and judgment rendered against Defendants jointly and severally for:

a. all profits received by Defendants from the sale of any goods or services bearing or sold under or in connection with Plaintiff's Mark and/or the Infringing Mark in the United States;

b. all damages in an amount proven at trial from, *inter alia*, Defendants' trademark infringement, false designation of origin, and false endorsement, pursuant to 15 U.S.C. § 1117; and

c. any other actual and compensatory damages in an amount not presently known but to be computed during the pendency of this action.

3. That any damages assessed against Defendants for trademark infringement, false designation of origin, and/or false endorsement be trebled as provided by 15 U.S.C. § 1117, and any profits be enhanced as warranted;

4. That Plaintiff be awarded statutory damages of not less than $1,000 or more than $100,000 per domain name against Defendants;

5. That the Court enter an order transferring the Infringing Domain Name to Plaintiff;

6. That Defendants be directed to file with the Court and serve upon

Plaintiff, no later than thirty (30) days after the issuance of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction requested in the immediately preceding paragraphs and any other provision of this Court's Order;

7. That Plaintiff have and recover its costs in this suit, including but not limited to reasonable attorneys' fees and expenses; and

8. That Plaintiff have such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 12, 2026.

Respectfully submitted,
THE SLADKUS LAW GROUP

*s/Jason H. Cooper*

Carrie A. Hanlon
Ga. Bar No. 289725
E-mail: carrie@sladlaw.com
Jason H. Cooper
Ga. Bar No. 778884
E-mail: jason@sladlaw.com

1397 Carroll Drive
Atlanta, GA 30318
Telephone: (404) 252-0900
Facsimile: (404) 252-0970
***Attorneys for Plaintiff***